J-S46011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BARRY G. WOODS | : | |
| | : | |
| Appellant | : | No. 3450 EDA 2019 |

Appeal from the Judgment of Sentence Entered October 17, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0005414-2002

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:            **FILED JANUARY 12, 2021**

Appellant, Barry G. Woods, appeals from the judgment of sentence of one to five years' incarceration, imposed following the revocation of his probation.  We affirm.

In addition to the findings the trial court made at the conclusion of Appellant's probation-revocation hearing, *see* N.T., 7/18/19, at 125-47, the trial court discussed the evidence supporting Appellant's probation violation as follows:

> Appellant pled guilty in 2003 to committing sexual crimes including rape against his two daughters.  He began raping them when they were eight and nine years old[,] and did not stop until he was arrested when they were twelve and thirteen.  Having completed a term of confinement in prison and probation, he now serves a consecutive term of probation.  In February of 2019[,] he was notified that he violated two conditions of probation: "I will conduct myself in a manner that will not create a danger to the community or myself[,]" and "I will cooperate and participate in any medical, psychological and/or psychiatric examination, test or treatment, counseling or education programs, as directed."  ***See***

N.T.[, 7/18/19, at] 39. He was notified that he violated these conditions by failing to comply with sex offender treatment and then being unsuccessfully discharged from sex offender treatment, *id.* at 42, having shown little empathy to his victims and having failed to openly process sexual fantasies about them in treatment, *id.* at 43. He was also notified that he violated these conditions by having unauthorized contact with minor children in breach of his sentencing order. *Id.* at 42-43.[1]

As a condition of probation, [A]ppellant was required to attend and participate in group counseling sessions. For approximately three years, psychologist Jennifer Bayer conducted the counseling sessions [A]ppellant attended. [N.T., 6/20/19,] at 82. She expressly told him that he was expected to participate in the group discussions for therapeutic purposes. *Id.* at 84. Appellant did not participate unless prompted, even after being told he would be discharged from the counseling program if he failed to participate. *Id.* at 85, 93, 94, 101. For example, [A]ppellant began treating with Ms. Bayer in September of 2015, *id.* at 82, but in April of 2018[,] he admitted that he had been sexually fantasizing about his daughters on an ongoing basis for a year without disclosing it in group therapy, N.T.[, 7/18/19, at] 6-7. When he did participate, he often minimized the severity of his crimes by withholding the fact that he physically penetrated his daughters, and by mentioning their ages when he was arrested[,] rather than when he began raping them. N.T.[, 6/20/19, at] 86-87. Ms. Bayer told [A]ppellant at the outset that he was expected to become aware of cognitive distortions that put him at risk for relapsing, *id.* at 84, and she gave [A]ppellant hand-outs and worksheets to help him gain insight and awareness into his cognitive distortions, *id.* at 84, 90, yet he persisted in telling the group that his daughters enjoyed having sex with him, which is a form of cognitive distortion that put him at risk of re-offending, *id.* at 88, 89-90, 90. Based on her observations over the three years in which he attended her counseling sessions, Ms. Bayer concluded that [A]ppellant was not making progress in treatment *because he did not want to rehabilitate himself.* *Id.* at 91. She specifically noted his lack of effort to process his ongoing deviant fantasies about having sex with his daughters or to learn to use mentally healthful [*sic*] coping skills. *Id.* at 94, 95. The

---

[1] Appellant had incidental contact with two minors in the lunchroom at his church. N.T., 7/18/19, at 42, 43-44.

undersigned found this testimony from Ms. Bayer to be credible and persuasive.

In September[] 2019[,] Ms. Bayer withdrew as [A]ppellant's therapist, *id*. at 82, and he began group therapy with Forensic Outpatient Therapist Lance Swaney, N.T.[, 7/18/19, at] 17. Appellant remained in therapy with Mr. Swaney until February 5, 2019. ***Id.*** On that date, Mr. Swaney "challenged" [A]ppellant about his lack of input during group therapy sessions, his failure to take initiative in terms of processing his thoughts[,] and his failure to work on his continuing sexual fantasies about his daughters. ***Id.*** Appellant denied fantasizing about his daughters, and deceptively minimized his thoughts by saying he had "memories" of the sexual behaviors with his daughters, but nothing more. ***Id.*** at 18. Mr. Swaney assessed [A]ppellant's problem as being a lack of honesty, ***id.*** at 20[,] therefore reinforcing Ms. Bayer's professional opinion that [A]ppellant did not want to rehabilitate himself. Because of [A]ppellant's failure to process his risk factors, among other things, Mr. Swaney discharged [A]ppellant from group therapy on February 5, 2019. ***Id.*** at 23. The undersigned found this testimony from Mr. Swaney to be credible and persuasive.

Trial Court Opinion (TCO), 1/31/20, at 3-5 (emphasis in original).

Following the revocation hearing, the trial court determined that Appellant violated the terms of his probation, and it sentenced Appellant to a term of 1-5 years' incarceration on October 17, 2019. At sentencing, Appellant was advised that he had a right to file a motion to reconsider his sentence within 10 days and then a right to appeal it within 30 days. N.T. Sentencing, 10/17/19, at 63-64. On October 28, 2019, Appellant filed a timely, post-sentence motion, which the trial court denied on November 4, 2019. In its order denying Appellant's post-sentence motion, the trial court stated that Appellant "has the right to appeal within 30 days of the entry of this order[.]" Order, 11/4/19, at 1 (unnumbered). Appellant subsequently

filed a notice of appeal on December 3, 2019. On December 4, 2019, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) no more than 28 days after the filing of its Rule 1925(b) order on the docket, and notified him that his issues would be deemed waived if not timely filed. Appellant filed his concise statement 30 days later on January 3, 2020.

Before delving into Appellant's issues, we must address the timeliness of his notice of appeal and concise statement. First, with respect to his notice of appeal, we observe that Appellant did not file it within 30 days from the date of his sentencing. **See** Pa.R.Crim.P. 708(E) ("The filing of a motion to modify sentence will not toll the 30-day appeal period[.]"); **see also Commonwealth v. Coleman**, 721 A.2d 798 (Pa. Super. 1998) (stating that a notice of appeal from a sentence imposed at a revocation hearing must be filed within thirty days from the date of sentencing). Generally, this Court may not enlarge the time for filing a notice of appeal. **See** Pa.R.A.P. 105(b) (providing that we may not enlarge the time for filing a notice of appeal); **Commonwealth v. Valentine**, 928 A.2d 346, 349 (Pa. Super. 2007) (same). However, on many occasions, we have refused to quash an untimely appeal where the trial court misadvised a defendant about the appeal period, recognizing that such conduct constitutes a breakdown in the court's operation. **See, e.g.**, **Commonwealth v. Coolbaugh**, 770 A.2d 788, 791 (Pa. Super. 2001) (declining to quash untimely appeal, recognizing that the problem arose as a result of the trial court's misstatement of the appeal

period, which operated as a breakdown in the court's operation) (citations omitted); *see also Commonwealth v. Larkin*, 235 A.3d 350, 353 (Pa. Super. 2020) (*en banc*) (setting forth cases where this Court has declined to quash an appeal when the defect resulted from an appellant's acting in accordance with misinformation relayed to him or her by the trial court). Accordingly, we will not quash Appellant's appeal because of its untimeliness, as the trial court misadvised Appellant about the appeal period both at sentencing and in its order denying his post-sentence motion.

Second, it appears that Appellant did not file his concise statement on time. Notwithstanding, our review of the docket shows that the trial court's December 4, 2019 Rule 1925(b) order was not served on Appellant's counsel until January 2, 2020. Consequently, Appellant has not waived his claims by filing his concise statement late, as the record indicates that he was not promptly served with the trial court's Rule 1925(b) order. *See* Pa.R.Crim.P. 114(B)(1) ("A copy of any order or court notice *promptly* shall be served on each party's attorney….") (emphasis added); Pa.R.Crim.P. 114(C)(2) (stating that docket entries shall contain the date of service of the order or court notice); Pa.R.A.P. 108(a)(1) ("[I]n computing any period of time under these rules involving the date of entry of an order by a court or other government unit, the day of entry shall be the day the clerk of the court or the office of the government unit mails or delivers copies of the order to the parties….").

Having concluded that the facial untimeliness of Appellant's notice of appeal and concise statement does not preclude our review, we proceed to

the merits of his appeal. Appellant raises the following issues for our consideration:

> 1. Whether the evidence was sufficient to violate [Appellant's] probation because he had incidental contact with minor children.
>
> 2. Whether the evidence was sufficient to violate [Appellant's] probation for violating a condition imposed by the probation department, specifically that [Appellant] conduct himself in a manner that will not create a danger to himself or the community.
>
> 3. Whether the evidence was sufficient to violate [Appellant's] probation for not complying with sex offender treatment.
>
> 4. Whether the evidence was sufficient to prove that probation has been an ineffective vehicle to accomplish rehabilitation and to deter against future anti-social conduct.

Appellant's Brief at 5.

We address Appellant's issues together, as they all challenge the sufficiency of the evidence to support the revocation of his probation. It is well-established that:

> When we consider an appeal from a sentence imposed following the revocation of probation, "[o]ur review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. 42 Pa.C.S. § 9771(b)." *Commonwealth v. Fish*, 752 A.2d 921, 923 (Pa. Super. 2000), *appeal denied*, … 771 A.2d 1279 ([Pa.] 2001) (citation omitted). Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. *Commonwealth v. Smith*, … 669 A.2d 1008, 1011 (Pa. Super. 1996). The Commonwealth establishes a probation violation meriting revocation when it shows, by a preponderance of the evidence, that the probationer's conduct violated the terms and conditions of his probation, and that probation has proven an ineffective rehabilitation tool incapable of deterring probationer from future antisocial conduct. *Commonwealth v. Sims*, 770 A.2d 346, 350 (Pa. Super. 2001).

- 6 -

\*\*\*

A challenge to the sufficiency of the evidence is

> a question of law subject to plenary review. We must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the offenses. A reviewing court may not weigh the evidence or substitute its judgment for that of the trial court.

*Commonwealth v. Snyder*, 870 A.2d 336, 346-47 (Pa. Super. 2005) (citations and quotation marks omitted).

*Commonwealth v. Perreault*, 930 A.2d 553, 557-58 (Pa. Super. 2007).

Appellant argues that he did not violate probation by having contact with children, *see* Appellant's Brief at 18, and insists that he did not conduct himself in a manner that could create a danger to himself or the community. *Id.* at 20. He also claims that the evidence was insufficient to prove that he willfully failed to comply with sex offender treatment. *Id.* at 24. He says that his attendance at treatment was excellent, and that his "counselor was in regular contact with his probation officer, and at no time did the counselor indicate that [Appellant] was not in compliance or otherwise in jeopardy of being terminated from the program." *Id.* He observes that, "at the probation violating hearing[,] the notes of [Appellant's] counselor were reviewed for the several months prior to his discharge and the notes were very positive." *Id.* (citation omitted). He contends that "[t]here was simply no indication given to [Appellant] or to his probation officer that [Appellant] was not in compliance until he was deemed to have been deceitful in response to [a] polygraph question asking whether he had viewed [his c]hurch's video surveillance for

'voyeuristic purposes[,]'" *id.* at 24-25, and he maintains that a failed polygraph cannot justify his violation of probation. *Id.* at 25.[2] Finally, Appellant claims that the evidence was insufficient to prove that he lacked the ability to reform, and that probation had been an ineffective vehicle to accomplish rehabilitation. *Id.* at 26-27. He asserts that the evidence "does not support a finding that [he] willfully or flagrantly violated the conditions of his probation." *Id.* at 27.

All of Appellant's arguments are meritless. First, the evidence was sufficient to establish that his conduct violated the terms and conditions of his probation. Here, when sentencing Appellant in 2013 to a term of incarceration followed by probation, the trial court ordered that "sex offender supervision is to continue. He's to comply with sex offender treatment and have no contact with minor children." N.T., 7/19/13, at 15.[3] However, in February 2019,

---

[2] By way of further background, Appellant had assisted in installing surveillance cameras at his church, and had put surveillance cameras on the outside of his home, which was owned by the church and on the church property. *See* N.T., 7/18/19, at 127-28, 132-33. When Appellant participated in a therapeutic polygraph, the polygraph report indicated that he was deceptive in answering "no" to the following question: "Since your last polygraph, have you viewed your surveillance/live feeds for voyeuristic purposes?" *See* Appellant's Brief at 10; N.T., 6/20/19, at 63-65; Commonwealth's Exhibit 3 at 8 (unnumbered).

[3] As such, to the extent Appellant claims that his probation cannot be revoked for violating conditions imposed by the probation department and not by the trial court, we reject his argument. *See* Appellant's Brief at 21. The trial court clearly directed Appellant to comply with sex offender treatment at sentencing.

Appellant was unsuccessfully discharged from sex offender treatment. Thus, he violated the terms of his probation by not complying with sex offender treatment. *See Commonwealth v. Taylor*, 2019 WL 6223801, at *5 (Pa. Super. filed Nov. 14, 2019) (deeming the evidence sufficient to show that the appellant violated his probation where the appellant conceded that he was discharged from sex offender treatment).[4, 5]

Second, the evidence was sufficient to show that probation has proven ineffective at deterring Appellant from future antisocial conduct. Before he was unsuccessfully discharged from treatment, Appellant disclosed during his pre-test interview for his polygraph test on January 28, 2019, *inter alia*, the following:

> [Appellant] stated he cannot obtain an erection any longer, due to medical issues and medications. [Appellant] stated that he still is sexually aroused by sexual fantasies about his daughters when they were children, but he is unable to masturbate to these thoughts.
>
> [Appellant] stated he has sexual thoughts of his victims maybe 10%-15% of the times. [Appellant] admitted that he is sexually attracted to children in general around the ages of 10-14 that he see[s] on TV or out in public but cannot masturbate to these thoughts.

---

[4] *See* Pa.R.A.P. 126(b) (stating that unpublished, non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

[5] Because the evidence supports that Appellant violated his probation by failing to comply with sex-offender treatment, we need not address his argument that he did not violate his probation by having contact with children.

Commonwealth's Exhibit 3 at 3 (unnumbered pages).[6]

Despite this admission, Appellant's former psychologist, Jennifer Bayer, explained that Appellant rarely discussed these fantasies and attractions at treatment. She called Appellant "high risk[,]" because he disclosed at the polygraph test that he was currently having fantasies and sexual attraction to minors, but did not volunteer that information at treatment. N.T. Trial, 7/18/19, at 8. According to Ms. Bayer, this lack of disclosure meant that Appellant had not made much progress in treatment and did not want to rehabilitate himself, as "[t]here was no opportunity for him to process his distortions or his defense mechanisms due to his inability to self disclose and process that information…." N.T., 6/20/19, at 91, 92-93. She detailed that Appellant "very rarely engaged in participation [during sex-offender treatment] unless prompted to do so[,]" which she said "is very significant, because that does show some type of noncompliance with the program as participation is a huge factor as to progress." *Id.* at 85. She observed that Appellant did not engage in self-disclosure, and "was very stoic in nature and presented as unmotivated. He seemed disconnected with his thoughts and his feelings." *Id.* She noted that, at the outset of treatment, she told

---

[6] *Commonwealth v. A.R.*, 80 A.3d 1180, 1183 (Pa. 2013) ("Despite prior case law excluding polygraph results from evidence, the admission here was not improper because the results were offered not as evidence of [the] appellant's probation violation, but as background evidence to explain the actions taken by program staff. … The polygraph evidence was simply offered by the Commonwealth to assist the court in attaining a full picture of why [the] appellant was dismissed from treatment.").

Appellant that he was expected to participate, and explained that Appellant and his group members "are fully aware at the time that they enter treatment that participation is what improves … rehabilitation. If you're not willing to disclose, then there's a resistance to treatment." *Id.* at 84, 93-94. Nevertheless, Appellant "would just sit there and not volunteer information or reflect on how his behavior impacted his victims." *Id.* at 93.

Further, when the results of the polygraph test came out, Appellant's current psychologist, Lance Swaney, testified to the following:

> [The Commonwealth:] What happened on February 5th, 2019?
>
> [Mr. Swaney:] That's when we had the results of his failed polygraph, and that was the group where I gave him a chance to process information that emerged from the content of the polygraph, and at that time I challenged [Appellant] in terms of, you know, deception related to question three about video feeds, and also … really primarily challenged him around his lack of input in group [therapy], and taking initiative in terms of processing, working on the sexual attraction to children and fantasy about his daughters.
>
> ***
>
> [The Commonwealth:] Was [Appellant] receptive to that challenge?
>
> [Mr. Swaney:] He denied having any -- using any video feed for voyeuristic purposes, and he kind of shut down the idea of any sexual fantasy. His response was that he had memories of the sexual behavior with his daughters and that was the extent of it.
>
> [The Commonwealth:] Now, are we talking solely about February 5th, 2019, or [Appellant's] progression as a whole during your time with him?
>
> [Mr. Swaney:] That was primarily February 5.

N.T., 7/18/19, at 17-18.  In general, throughout treatment, Mr. Swaney conveyed that Appellant "was not able to be … fully invested in the treatment process.  I mean, effective treatment requires one to be open and honest, and particularly[,] the longer someone has been in treatment [the more honesty is needed], to make sure that … the issues that they're working on are being addressed."  *Id.* at 19.  He elaborated:

> [T]he problem is in terms of [Appellant's] lack of honesty, in that [Appellant] would not mention that he had a sexual fantasy or a sexual memory, as he called it.  You know, when we were working on some different phases of the cycle that we used, there was no awareness of risk, risk factors toward relapse, and … if he's not acknowledging … any kind of deviant fantasies, then … it's very challenging trying to get work or progress done at that point.

*Id.* at 20.  Accordingly, the record supports that probation has proven ineffective at deterring Appellant from future antisocial conduct, given his lack of honesty and participation in treatment, despite knowing the importance of those things to his rehabilitation.

Based on the foregoing, we conclude that the trial court did not err or abuse its discretion in revoking Appellant's probation.  Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the Commonwealth has established, by a preponderance of the evidence, that Appellant violated the terms of his probation, and that probation has proven ineffective at deterring him from future antisocial conduct.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2021